IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY NATHAN COSS,

                Petitioner,

        vs.

PLACER COUNTY COURT,

                Respondent.

No. 2:11-cv-01306-JKS

MEMORANDUM DECISION

Jeffrey Nathan Coss, a California probationer appearing *pro se*, filed a Petition for Habeas Corpus Relief under 28 U.S.C. § 2254. Coss is currently on probation in the custody of the California Department of Corrections and Rehabilitation. Respondent has answered, and Coss has replied. At Docket No. 20 Coss has filed a motion to consolidate this case with *Coss v. Placer County Superior Court*, No. 2:11-cv-00966-GEB-KJM.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Coss was charged in an Amended Felony Complaint with Arson of an Inhabited Structure or Property (Penal Code § 451(b)),[1] a serious felony (Penal Code § 1192.7(c)(14)), with a special allegation that Coss proximately caused the multiple structures to burn in a single act of arson (Penal Code § 451.1(a)(4)) arising out of an incident that occurred on September 24, 2009. Coss, represented by counsel, entered a plea of no contest to a charge of arson (Penal Code § 451(b)), and admitted to a violation of probation imposed in a prior conviction. On January 27, 2010, the Placer County Superior Court sentenced Coss to a four-year term of probation, to be served consecutive to the earlier term of probation. Coss did not appeal his conviction or sentence. On

----

[1] References to the Penal Code are to the California Penal Code.

August 19, 2010, Coss, appearing through counsel, moved in the Placer County Superior Court

to withdraw his plea, which motion was denied as untimely on October 4, 2010.  On

November 3, 2010, Coss, appearing through counsel, filed a petition for habeas relief in the

Placer County Superior Court, which was denied in an unreported reasoned decision on

November 8, 2010.  Coss, appearing through the same counsel, then filed a second petition for

habeas relief in the Placer County Superior Court on December 30, 2010, which was also denied

in an unreported reasoned decision on January 31, 2011.  On February 16, 2011, appearing *pro

se*, Coss filed a petition for habeas relief in the California Supreme Court.  The California

Supreme Court summarily denied relief without opinion or citation to authority on March 30,

2011.  Coss timely filed his Petition for relief in this Court on May 13, 2011.

The factual basis underlying Coss's crime is well known to the parties and is not

necessary to a determination of the issues before this Court.  Accordingly, those facts are not

recited here.

## II.  GROUNDS RAISED/DEFENSES

In his Petition Coss raises three grounds:  (1) ineffective assistance of counsel; (2) that he

was denied the statutory right to change his plea within six months of entry; and (3) that he was

denied access to exculpatory evidence prior to trial.  Respondent contends that Coss's second and

third grounds are unexhausted.  Respondent asserts no other affirmative defenses.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[3]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[4]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[6]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[7]  "[A]bsent a specific constitutional

---

[2] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-75 (2003) (explaining this standard).

[3] *Williams*, 529 U.S. at 412 (alteration added).

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[6] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[8]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[9]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[10]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[11]

---

[8] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[10] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[11] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[12]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[13]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[14]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[15]  This is considered as the functional equivalent of the appeal pro cess.[16]

---

[12] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[13] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[14] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[15] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[16] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

IV.  DISCUSSION

**A.      Motion to Consolidate**

Coss has moved to consolidate this case with a prior habeas petition involving an earlier conviction and other relief related thereto.  A review of the record in the prior case, of which this Court takes judicial notice,[17] shows that it was dismissed on October 1, 2009, for failure to exhaust available state-court remedies.[18]  Because the prior case that Coss wishes this case to be consolidate with is closed and Coss has not made a proper motion in that case to reopen it, this Court declines to order the cases consolidated.  Accordingly, the motion to consolidate and other related relief at Docket No. 20 is **DENIED**.

**B.      Exhaustion**

Respondent contends that because Coss presented those claims to the state courts solely on the basis of state law, he has not properly exhausted is state-court remedies.  This Court may not consider claims that have not been fairly presented to the state courts.[19]  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[20]  A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper

---

[17] Fed. R. Evid. 201.

[18] *Coss v. Placer County Superior Court*, No. 2:09-cv-00966-GEB-KJM, Docket Nos. 8, 9.

[19] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[20] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

vehicle, and (3) by providing the proper factual and legal basis for the claim.[21]  A petitioner must

alert the state courts to the fact that he is asserting a federal claim in order to fairly present the

legal basis of the claim.[22]

In the Ninth Circuit, a petitioner must make the federal basis of the claim explicit either

by referencing specific provisions of the federal Constitution or statutes, or citing to federal case

law.[23]  Mere similarity of claims between a state law claim and a federal law claim is insufficient

for exhaustion purposes.[24]  In order to present the substance of a claim to a state court, the

petitioner must reference a specific federal constitutional provision as well as a statement of facts

that entitle the petitioner to relief.[25]  A mere appeal to a broad constitutional guarantee, e.g., due

process, is insufficient to present the substance of a constitutional claim to the state courts.[26]

Ground 2:  Denial of Change of Plea

After he had entered his plea, Coss moved to withdraw the plea under Penal Code § 1018,

which the Placer County Superior Court denied as untimely.  In both his petitions for habeas

relief in the Placer County Superior Court and the California Supreme Court Coss affirmatively

pleaded that the denial of his motion to withdraw his guilty plea under Penal Code § 1018 as

untimely was in error.  Coss did not raise any federal constitutional ground.  To the extent that

---

[21] *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009).

[22] *Duncan,* 513 U.S. at 365-66.

[23] *Robinson v. Schiro*, 595 F.3d 1086, 1101 (9th Cir. 2010); *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000), *as amended and superseded by Lyons v. Crawford*, 247 F.3d 904 (9th Cir. 2001).

[24] *Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996).

[25] *Gray v. Netherland,* 518 U.S. 152, 162-163 (1996).

[26] *See id.* at 163; *Anderson v. Harless*, 459 U.S. 4, 7 (1982).

Coss alleges a constitutional basis for relief before this Court, it appears to be that he was denied the effective assistance of counsel with respect to his insanity claim, an issue that is addressed in his first ground.

Even where a federal petitioner has not exhausted his state-court remedies, however, this Court may nonetheless deny a habeas claim on the merits, the failure to exhaust notwithstanding,[27] when it is clear that the petition does not raise a colorable federal claim.[28]  In this case, it is evident that Coss does not present even a colorable federal claim in his second ground.  Because Coss presented his claim to the Placer County Superior Court, which denied relief solely on state-law grounds, it is beyond the purview of this Court in this proceeding.[29] Accordingly, Coss is not entitled to relief under his second ground.

Ground 3:  Denial of Access to Exculpatory Evidence

At the restitution hearing approximately six months after sentence was imposed, the trial court disclosed that it had received documentation from the California Department of Mental Health dated June 27, 2009, three days after the crime was committed, indicating that Coss was committed to the Placer County Psychiatry Mental Facility as a danger to himself and gravely disabled as defined in California Welfare and Institutions Code § 5008(h)(1), (l).[30]  Coss

---

[27] 28 U.S.C. § 2254(b)(2).

[28] *Cassett v. Stewart,* 406 F.3d 614, 624 (9th Cir.2005); *see Rhines v. Weber*, 544 U.S. 269, 277 (2005) ("plainly meritless").

[29] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[30] As relevant to this proceeding, Penal Code § 5008 provides:
(h) (1) For purposes of Article 1 (commencing with Section 5150), Article 2 (commencing with Section 5200), and Article 4 (commencing with Section 5250) of

(continued...)

contends that the failure to disclose this information prior to that time constituted a *Brady* violation.[31]  Coss raised this issue for the first time in his petition for habeas relief before the California Supreme Court claiming he was "denied right to exculpatory evidence."  As noted above, the California Supreme Court summarily denied relief.

In the Ninth Circuit, normally a petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal Constitution or statutes, or citing to federal case law.[32]  Here, although Coss did not strictly meet these requirements, he did specifically identify a violation of a federal constitutional right in terms sufficiently specific to

---

[30](...continued)
Chapter 2, and for the purposes of Chapter 3 (commencing with Section 5350), "gravely disabled" means either of the following:

(A) A condition in which a person, as a result of a mental disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter.

(B) A condition in which a person, has been found mentally incompetent under Section 1370 of the Penal Code and all of the following facts exist:

(i) The indictment or information pending against the defendant at the time of commitment charges a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person.

(ii) The indictment or information has not been dismissed.

(iii) As a result of mental disorder, the person is unable to understand the nature and purpose of the proceedings taken against him or her and to assist counsel in the conduct of his or her defense in a rational manner.

*    *    *    *

(l) "Antipsychotic medication" means any medication customarily prescribed for the treatment of symptoms of psychoses and other severe mental and emotional disorders.

[31] *Brady v. Maryland*, 373 U.S. 83 (1962).  In addition to *Brady*, Coss cites the Sixth and Fourteenth Amendments, *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 547 U.S. 813 (2006).

[32] *Robinson v. Schiro*, 595 F.3d 1086, 1101 (9th Cir. 2010).

call to mind that specific constitutional right,[33] i.e. the right to exculpatory evidence under *Brady*. Giving Coss, a prisoner appearing *pro se*, the benefit of liberal construction,[34] this Court declines to deny Coss relief on an ambiguous procedural deficiency.  Moreover, even if this claim was unexhausted, as discussed further below, it is utterly lacking in merit and may be denied on that basis.[35]

     *Brady*, and its progeny, require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching."[36]  The first hurdle that Coss fails to clear is that there is no evidence that the "evidence" originated from the prosecution or even that the prosecution was aware of its existence.  The second hurdle that Coss fails to surmount is that he was certainly aware of the fact of his mental condition and his hospitalization shortly after he set the fire to his residence.  Finally, a *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed.[37]  That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."[38]  Because Coss entered a guilty plea *and* the "evidence" was in the possession of the trial court *and*, as

---

    [33] *See DeSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006).

    [34] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

    [35] 28 U.S.C. § 2254(b)(2).

    [36] *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

    [37] *Id.* at 281.

    [38] *United States v. Bagley,* 473 U.S. 667, 678 (1985).

discussed further below, it is inconceivable that revelation of this evidence would have resulted in whether or not counsel recommended accepting the plea bargain, there is no possible way that the outcome could have differed.  Coss is not entitled to relief under his third ground.

**C.     Merits**

Ground 1:  Ineffective Assistance of Counsel

In his first ground Coss contends that his counsel was ineffective in that counsel failed to: (1) inform him of the potential insanity defense; (2) interview potential defense witnesses; and (3) advise him that he would be held liable for restitution for damages to the neighbor's house as well as to his insurance company for damages to his own property.  Coss raised his claims in his second habeas proceeding in the Placer County Superior Court.

The Placer County Superior Court denied Coss relief, holding:

> In essence, [Coss] is alleging that· his trial counsel did not adequately investigate nor inform him of a possible mental defense.  However, once again, the petition is lacking specificity and factual information.  A petition should both (i) state *fully and with particularity the facts on which relief is sought* (*People v. Karis* (1988) 46 Cal.3d 612, 656 [250 Cal.Rptr. 659, 758 P.2d 1189] [hereafter Karis]; *In re Swain* (1949} 34 Cal.2d 300, 304 [209 P.2d 793]), as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations.  (*In re Harris* (1993} 5 Cal.4th 813, at p. 827, fn. 5; *Clark*, *supra*, 5 Cal.4th at p. 791, fn. 16.)
>
> The petition in this case does not contain any mental health records, reports, or declarations from psychiatric experts or otherwise to support [Coss's] claim that at the time he committed the crime or at the time he entered a plea. he was suffering from a serious mental illness that may have rendered him legally insane or incompetent.  [Coss] further states that his counsel, "failed to fully investigate my case", but does not articulate what type of investigation was needed and what further investigation would have revealed .
>
> Accordingly, the petition for writ of habeas corpus is denied.[39]

---

[39] Docket No. 1 at 22; Lodged Doc. No. 2 at 2 (emphasis in the original).

Coss then filed an identical petition in the California Supreme Court with the addition of the one-page medical record dated September 27, 2009, committing Coss to the Placer County Psychiatry Mental Facility, and the December 13, 2010, letter from his treating psychiatrist.[40]

Reading Coss's Petition liberally, as it must,[41] this Court construes Coss's claim as one to permit the withdrawal of his guilty plea on the basis of ineffective assistance of counsel, the only ground available to him.  "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[42]  "In order to prevail on prejudice before the state court [Coss] had to demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[43]  Although it is not entirely clear from Coss's Petition, this is precisely what Coss is arguing and it is in that light that this Court must view Coss's claim.

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.  Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.[44]

---

[40] At no point in the state-court habeas proceedings did Coss request an evidentiary hearing or proffer any additional evidence for consideration.  Likewise, Coss does not request an evidentiary hearing in this Court.

[41] *Erickson*, 551 U.S. at 94; *Porter*, 620 F.3d at 958.

[42] *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

[43] *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (quoting *Hill*, 474 U.S. at 59).

[44] *United States v. Broce*, 488 U.S. 563, 569 (1989).

Coss, however, faces a high hurdle in seeking to overturn a guilty plea on collateral review.  As the Supreme Court held in *Mabry*:

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.  It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.  *In Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:
>
> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).[45]

Twenty years later the Supreme Court explained:

> [The Supreme Court] recently explained, in reversing a lower court determination that a guilty plea was not voluntary:  "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original).  We similarly observed in *Patterson*: "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." 487 U.S., at 294, 108 S.Ct. 2389 (internal quotation marks omitted).[46]

This matter did not go to trial; Coss entered a guilty plea.  Accordingly, the only issue properly before this Court in this whether counsel was so ineffective in advising Coss to plead

---

[45] *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) (internal quotation marks and citations omitted), *disapproved on other grounds in Puckett v. United States*, 556 U.S. 129, 138 n.1 (2009).

[46] *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (emphasis in the original).

guilty that it rendered his plea unknowing, unintelligent and involuntary.  This Court must, therefore, analyze Coss's claims in that light, i.e., the effect of counsel's performance on the voluntariness of the guilty plea.

The last reasoned decision of a California court was that of the Placer County Superior Court.  Normally, because the California Supreme Court summarily denied Coss's petition, this Court would look to that decision.[47]  In this case, however, Coss filed a new original petition in the California Supreme Court in which he introduced evidence not presented to the trial court. Because the California Supreme Court gave no reasons for its denial, this Court must assume that the decision was on the merits and that, in so doing, the court considered the additional evidence. In California habeas proceedings, the court presumes the regularity of the trial proceedings, the burden is on the petitioner to establish grounds for relief, and conclusory allegations without any explanation or evidentiary support are insufficient.[48]  The same standard is applied by this Court in federal habeas proceedings.[49]

At the plea colloquy, Coss acknowledged that he was entering a guilty plea freely and voluntarily, that he understood the charges against him, had discussed the case with his attorney, and that he admitted the factual basis for the charges.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of

---

[47] *Ylst*, 501 U.S. at 802-03.

[48] *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995).

[49] *Pinholster*, 131 S. Ct. at 1398 (citing *Viscotti*, 537 U.S. at 25); *Silva*, 279 F.3d at 835.

conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.[50]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Coss must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[51]   A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[52]   In *Hill*, the Supreme Court explained that a habeas petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[53]   Indeed, the Supreme Court has admonished:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[54]

---

[50] *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (citing *Marichoba v. United States*, 368 U.S. 487, 495-96 (1962)).

[51] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[52] *Id.*

[53] *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

[54] *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[55]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[56]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law [,][which] is different from an *incorrect* application of federal law."[57]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[58]

In the context of plea bargaining, the Supreme Court has cautioned:

---

[55] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[56] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003)).

[57] *Richter*, 131 S. Ct. at 785 (emphasis in the original).

[58] *Id.* at 786.

Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture," *Richter,* --- U.S., at ----, 131 S.Ct. 770. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.[59]

---

[59] *Premo v. Moore*, 131 S. Ct. 733, 741-42 (2011).

"Deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations described above."[60]

This Court's analysis starts with the fact that had Coss been convicted of the arson charge, he would have faced a prison term of three, five, or eight years.[61]  In exchange for his no contest plea Coss was sentenced to four years probation and referred to the mental health court for evaluation.  Thus, Coss, as a result of his plea, received a significantly more favorable result.

With respect to his insanity allegation, there is no evidence in the record that would support a finding that there is a reasonable probability that he could have been found to be *legally* insane.  Indeed, the record conclusively negates his arguments.  The record reflects that at the time he entered his plea his mental condition was considered.

> THE COURT:  *  *  *  *
> And if Mr. Coss happens to find a residential treatment program, he can as soon as he is sentenced transition into that program at any time he finds a program.
> [PROSECUTOR]:  Door to door.
> THE COURT:  Was there anything else?
> [PROSECUTOR]:  Just that the [Penal Code §] 1017 I guess would be deemed a [Evidence Code §] 730 evaluation so probation can utilize it in developing their recommendations.  And then we will asking upon sentencing or at some time in the future if Mr. Coss actually goes to a program, when we do the sentencing, then I think that we would wait until he is done with his residential program to go to mental health court.  But it would appear, at least from the pysch eval, that Mr. Coss may be in need of medication or some other form of treatment to take care of both his substance abuse issues and some psychological or psychiatric needs.
> THE COURT:  We'll let others better trained for that determine that.
> [PROSECUTOR]:  Yes.
> THE COURT:  Mr. Coss, do you understand all of that?
> THE DEFENDANT:  Yes.[62]

---

[60] *Id.* at 743-44.

[61] Penal Code § 451(b).

[62] Lodged Doc. No. 6, Reporter's Transcript, November 10, 2009, at 3.  This Court

(continued...)

At sentencing, it was also discussed:[63]

> [DEFENSE COUNSEL]: [. . . .]  Mr. Coss is -- has not been found suitable for Mental Health Court terms.
>
>     \* \* \* \*
>
> [DEFENSE COUNSEL]:  The only issue, going over the -- the sentencing orders, and I have done that, and also deleted the mental health terms, which -- as he was found not suitable for mental health court.
>
> THE COURT:  Okay.[64]

Likewise, the subject of restitution was discussed.

> [DEFENSE COUNSEL]:  And I think at some point in time, the restitution had been changed.
>
> THE COURT:  copy of the orders that I have here, it's $11,410.13.  Is it -- excuse me.  It's -- there are two amounts that -- and then $16,614.80.
>
> [DEFENSE COUNSEL]:  I believe that at a previous court date, the 16,614.58 was changed to 2,680.40.
>
> THE COURT:  $2,680.40?
>
> [DEFENSE COUNSEL]:  Yes.
>
> THE COURT:  Miss Lunardi  [the Prosecutor], do you agree?
>
> [PROSECUTOR]:  No.  What date did that occur?
>
> THE COURT:  Oh.  Was that the neighbor's house?
>
> MR. SANGA:  Yes.  Neighbor's fence.
>
> THE COURT:  The record's attached to the probation report.  There's a letter from Deborah Hergastan (phonetic spelling) with attached documents supporting the lower amount.
>
> MR. SGANGA:  Appendix D.  El Dorado Restoration.
>
> THE COURT:  It was originally listed as Appendix B.
>
> MR. SGANGA:  As 12,345.
>
> THE COURT:  And we agreed that Appendix D shows that it's the amount quoted.

---

[62](...continued)

assumes from the context that the reference to "1017" is to Penal Code § 1017, "Place, form, and entry of plea," and "730" is a reference to California Evidence Code § 730 "Appointment of expert by court," for the purpose of evaluating Coss's mental condition.

[63] At sentencing, although the record reflects that the public defender who represented Coss at the time of his plea, Mr. Sganga, also was present and participated, Coss was represented by a different public defender.

[64] Lodged Doc. No. 7, Reporter's Transcript, January 27, 2010, at 2, 3 (omitted material refers to a break in the proceedings).

[PROSECUTOR]:  I'm looking at the 1,375.

MR. SGANGA:   One of the -- looking at the 16,614, which is based on Appendix B.

THE COURT:  It states the loss from Tim Heton and Deborah Hergastan. That statement of loss, Appendix B.  See at the top.  Building repairs per El Dorado Restoration, listed 12,345.

[PROSECUTOR]:  Okay.[65]

The hearing on the amount of the restitution was set for a later date.

The record refutes any suggestion that trial counsel was unaware of or did not consider a possible insanity plea, or that the September 27, 2009, report committing Coss to the Placer County Psychiatry Mental Facility was newly discovered (note the reference to a "psych eval"at the time of the plea and no other mental evaluation has been provided or even alluded to).  The record also supports the inference that if Coss had entered a plea of on not guilty by reason of insanity, he would not have prevailed.  It stretches credulity beyond the breaking point that, even though he may not have known until the July hearing the amount of the restitution, he knew not later than the sentencing that restitution was going to include the damages to the neighbors house.

Under California law, a defendant places insanity at issue by entering a plea of not guilty by reason of insanity, either alone or in conjunction with another plea and, in the latter event, the defendant is conclusively presumed sane in the guilt phase.[66]  "At a trial on the issue of guilt,

---

[65] Lodged Doc. No. 7, Reporter's Transcript, January 27, 2010, at 3-4.

[66] Penal Code § 1026(a).

(a) When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, the defendant shall first be tried as if only such other plea or pleas had been entered, and in that trial the defendant shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed.  If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by

(continued...)

'[e]vidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.'"[67]  In the sanity phase, California applies the *McNaughten* test,[68] under which "insanity is established if the defendant was incapable of knowing or understanding the nature and quality of the criminal act, or of distinguishing right from wrong."[69]  "Notably, a defendant may suffer from a diagnosable mental illness without being insane under the *McNaughten* standard."[70]  In the California Department of Mental Health June 27, 2009, commitment notice, while the boxes preceding "A

---

[66](...continued)
reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court.  In that trial, the jury shall return a verdict either that the defendant was sane at the time the offense was committed or was insane at the time the offense was committed.  If the verdict or finding is that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law.  If the verdict or finding be that the defendant was insane at the time the offense was committed, the court, unless it shall appear to the court that the sanity of the defendant has been recovered fully, shall direct that the defendant be confined in a state hospital for the care and treatment of the mentally disordered or any other appropriate public or private treatment facility approved by the community program director, or the court may order the defendant placed on outpatient status pursuant to Title 15 (commencing with Section 1600) of Part 2.

[67] *People v. Mills*, 286 P.3d 754, 759 (Cal. 2012) (quoting Penal Code § 28(a)); Penal Code § 29 ("In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged.  The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact.").

[68] *McNaughten's Case*, 8 Eng. Rep. 718, 722 (1843).

[69] *Mills*, 286 P.3d at 759; Pen. Code § 28(b); *see People v. Skinner*, 704 P.2d 752, 758-59 (Cal. 1985).

[70] *Mills, supra.*

danger to himself" and "Gravely disabled" were checked, the box preceding "A danger to others" is conspicuously unchecked.  The commitment notice indicates that Coss was suffering from delusions of evil forces wanting to take him to the other side, wanting him dead, and that Coss had poor impulse control.  In his 2010 letter, Coss's psychiatrist stated:

> I am appalled that the court has not taken into account that the patients mental state at the time of this incident was severely disturbed complete with delusions and manic behavior that was not induced by drugs.  The condition was so severe that the patient was psychiatrically hospitalized at the Placer County inpatient psychiatric facility on Cirby Hills.  I have a great deal of inpatient experience and was Medical Director at that facility when it was Charter Hospital.  He was detained there for 13 days and although I have not seen those records he was psychotic with what sounds like a manic psychosis with an underlying bipolar disorder.  The pt was delusional at the time of the arson believing that he was a disciple of Christ with special powers accompanied by severe thought disorder.  For example if someone said "hang in there" meant he should try to hang himself.
>
> He called his friend believing he had commited [*sic*] murder to check if his family was ok. ( he had not harmed any one)  The friend who was a fire fighter said "I put out two fires tonight" and this meant to him that he should set fires and neighbors were involved in a rescue mission.  Pt was clearly psychotic with severe ideas of reference.  His thoughts were clearly convoluted.[71]

At most, even if properly considered, the "evidence" submitted by Coss indicates he may have been acting under an "irresistible impulse" or suffered from a diminished capacity, neither of which is recognized as sufficient to establish an insanity defense under California law.[72] Nothing in either document indicates that Coss was incapable of appreciating the nature of his acts or distinguishing between right and wrong—the litmus test under California law.[73]

---

[71] Docket No. 1 at 10.

[72] Penal Code § 28(b) ("As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action . . . ."); *see People v. Clark*, 261 P.3d 243, 338 (Cal. 2011); *People v. Danielly*, 202 P.2d 18, 31 (Cal. 1949).

[73] *See Clark, supra.*

To the extent that the friends and neighbors might have been able to testify as to what they observed with respect to Coss's behavior, it would have added nothing of any substance to Coss's claim of legal insanity.  Under the facts presented, it is incomprehensible that, assuming Coss was not fully advised as to his defenses or that full restitution was required, even had he been properly advised of the true state of California Law Coss would have elected to have gone to trial and faced five, or more years, in prison *plus* be required to make restitution, instead of the four years probation he received.  Nor is there any indication in the record that Coss did not fully comprehend and understand the plea he was entering or the consequences of that plea.[74]  Indeed, it is self-evident that Coss's mental condition was fully considered and appreciated by his counsel, the prosecution, and the court.  Coss is not entitled to relief under his first ground.

---

[74] Coss did not contend before the state courts that he was incompetent to enter a plea, nor does he make that claim before this Court.

## V.  CONCLUSION AND ORDER

Coss is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the motion to consolidate and other related relief

at Docket No. 20 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[75]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[76]

The Clerk of the Court is to enter judgment accordingly.

Dated:  December 17, 2012.

        /s/ James K. Singleton, Jr.
        JAMES K. SINGLETON, JR.
        United States District Judge

---

[75] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[76] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.